UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ERNESTO BAUTISTA BALUYOT JR.,

Petitioner,

v.

CHRISTOPHER LaROSE; MARKWAYNE MULLIN; TODD BLANCHE; TODD LYONS; and JESUS ROCHA,

Respondents.

Case No.: 3:26-cv-4972-JES-DDL

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 5]**

Before the Court is Petitioner Ernesto Bautista Bayulot Jr.'s ("Petitioner") Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause (ECF No. 6), Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 8, 9. The Court then ordered joint supplemental briefing from the parties, to which the parties filed responses. ECF Nos. 10-13. After due consideration and for the reasons set forth below, the Court **GRANTS** the petition.

## I. BACKGROUND

Petitioner is a native of the Philippines who initially entered the United States on a temporary visitor's Visa on December 15, 2024. ECF No. 5 at 2; ECF No. 8 at 2. He

subsequently filed an affirmative application for asylum (I-589).[1] ECF No. 5 at 2; ECF No. 8-3 at 3.

On July 31, 2025, he was issued a Notice to Appear ("NTA") and placed into removal proceedings for overstaying the visa. ECF No. 8 at 2; ECF No. 8-1 at 3. In their response to the Court's request for supplemental briefing, Petitioner appears to have been released under the Alternatives to Detention ("ATD") program pending his removal proceedings.[2] *See* ECF No. 11-1 (Notice to Alien of ATD Enrollment, dated September 10, 2025).

On July 14, 2026, a criminal complaint was filed against Petitioner based on events that took place in Yosemite National Park. ECF No. 8 at 2; ECF No. 8-2. Petitioner was charged with operating a vehicle under the influence of drugs/alcohol and possession of a controlled substance. ECF No. 8-2. On July 17, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") at his Intensive Supervision Appearance Program ("ISAP") check-in and taken into immigration detention. ECF No. 5 at 2; ECF No. 8 at 2-3.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in

[1] There is some discrepancy regarding when the asylum application was filed. In his amended petition, Petitioner alleges that it was filed in March 2025. ECF No. 5 at 2. In the governments I-213 from July 17, 2026, it states that the I-589 was filed on June 13, 2025. ECF No. 8-3 at 3.

[2] It is still not clear from the briefing by the parties whether Petitioner was ever detained after removal proceedings were initiated against him before he was released under the ATD program.

that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Petitioner argues in his amended petition that Respondents violated his due process rights arising from his asylum application. ECF No. 5 at 2-5. Respondents allege that Petitioner was detained because of the new criminal complaint alleged against him. ECF No. 8 at 2. Respondents also argue that there are no due process considerations because "Petitioner's July 17, 2026, apprehension was his first DHS apprehension, so there was no prior release to revoke and no prior determination by DHS that Petitioner poses no danger to the community and is not a flight risk." ECF No. 8 at 5. However, as the response to the Court's order for supplemental briefing shows, Petitioner was previously put into removal proceedings and released under the ATD program. ECF No. 11-1. Thus, the Court will analyze the due process claim under this factual scenario.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16,

2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.*

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi*, 792 F. Supp. 3d at 1034-35.

Here, Petitioner had previously been paroled under ATD, a program "designed 'to provide supervised release and enhanced monitoring for a subset of foreign nationals subject to removal whom ICE has released into the United States.'" *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *6 (E.D. Cal. Aug. 28, 2025) (citation omitted). "These aliens are not statutorily mandated to be in DHS custody, are not considered threats to public safety or national security, and have been released either on bond, their own recognizance, or parole pending a decision on whether they should be removed from the United States." *Id.* (citation omitted).

Courts have consistently held that noncitizens who have been granted some form of parole with ATD have a protected interest in their liberty, cognizable under due process. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (finding that petitioner who was released subject to ATD conditions "undoubtedly" has an "established interest in his liberty"); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025) ("When an immigrant is placed into parole status after having been detained, a protected liberty interest may arise."); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *14 (E.D. Cal. Oct. 16, 2025) (similarly finding liberty interest). Courts have found such liberty interest even where violations of the ATD conditions have occurred, so such liberty interests are at "full force" where no violations of the conditions have been alleged against Petitioner. *See Herna v. Chestnut et al.*, No. 1:25-CV-01919-JLT-SAB (HC), 2026 WL 177801, at *4 n.2 (E.D. Cal. Jan. 22, 2026).

Having established a liberty interest, any revocation of Petitioner's liberty must adhere to the requirements of Due Process—namely, that Petitioner must be given notice and an opportunity to be heard before such revocation can take place. The Court asked the parties twice to provide it with the conditions of Petitioner's ATD, in particular what conditions Petitioner must abide by so as to not violate his parole. ECF Nos. 11, 13. In the latest filing, the parties state "[d]espite their best efforts, the Parties are unable to provide

additional information 'listing all the conditions of Petitioner's release.'" ECF No. 13. Without such information, the Court cannot find that Respondents adhered to what Due Process requires in establishing that Petitioner violated a condition of his parole, and was given notice and opportunity to address the violation, or to address his risk of flight and danger before his liberty interest was revoked.

Thus, with the information before it, the Court finds that Respondents violated procedural due process in Petitioner's re-detention and grants the habeas petition on this ground.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus and **ORDERS** Respondents to **<u>immediately</u>** release Petitioner from custody, subject to any conditions of his preexisting release that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **<u>November 12, 2026</u>**, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated: November 6, 2026



Honorable James E. Simmons Jr.
United States District Judge